No. 30,232.

MRS. HARRY J. EASTMAN, *Appellee*, v. THE KANSAS STATE HIGH-
WAY COMMISSION, *Appellant*.

(10 P. 2d 854.)

Opinion filed
May 7, 1932.

*Wint Smith, Ralph M. Hope,* both of Topeka, *J. F. Bennett* and *Robert W.
Hemphill,* both of Norton, for the appellant.

*A. W. Relihan* and *T. D. Relihan,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to collect damages for an injury
alleged to have been suffered on account of a defective state high-
way. Judgment was for plaintiff. Defendant appeals.

The injury occurred on highway 36 some miles east of Norton.
The highway commission was putting in a bridge on that road. To
do this an excavation had been made across the road. This excava-
tion was about six feet deep. The point where the bridge was being
constructed is about a half mile east of what will be spoken of as the
"Rosborough corner," where a country road crosses highway 36.
For a time prior to the injury highway 36 had been closed to traffic
from Norton east, but for some days prior to the night in question
highway 36 had been open from Norton east to the Rosborough
corner, where it was closed.

On the night in question appellee, riding as a passenger in an auto-
mobile, left Norton going east about 9:30 p. m. The car did not go
east out of Norton on highway 36, as it could have done, but instead
took a road which had been a detour during the time that highway
36 had been closed between Norton and the Rosborough corner.

This road led to the Rosborough corner from the south. The way it was expected that traffic would go was to reach the Rosborough corner on highway 36 and thus go around the bridge where the injury in question occurred. For traffic that approached the corner from the south on the country road it was expected that it would either turn west on highway 36 and go toward Norton or go on north across highway 36 and continue on the country road. Since the car in which appellee was riding was east bound it should have continued across highway 36 on the country road and eventually reached highway 36 again on the other side of the bridge in question. Instead of this, however, it turned east on highway 36 at the Rosborough corner and proceeded east on that road about half a mile when it ran into the bridge, with the result that appellee was injured.

In order that the case may be understood we will notice the situation at the corner with reference to signs. As the traveler approached the corner from the west there was, about 300 feet from the corner, a standard "turn sign" sixteen inches in diameter and with the word "turn" on it in letters four inches high, and an arrow pointing to the north at a point 200 feet west of the corner, and a "railroad crossing" sign fifteen inches in diameter there. It should be noted that the railroad ran almost parallel with highway 36 here and just a little to the north. Between the railroad crossing sign and the corner was a standard with a "U. S. 36" sign, a "Kansas 22" sign and an arrow pointing to the north. About three or four feet east of the intersection a large sign had been erected by the company which was constructing the bridge. This sign was painted white, was three to four feet wide, two feet high and had on it the words "Danger ahead" across the top, a black stripe across the center, and the words "Road closed" across the lower part. The letters of these words were painted in red and were four inches in height. This sign was standing approximately in the center of the highway from north to south. The sign was put up with a two-by-six center post, which was about five feet in height, and the post was set in the ground to a depth of about one foot. The sign was braced on each side and in the back by three two-by-six boards, six feet long, which were driven in the ground a short distance.

At night a light was kept in place at the base of and in front of the above-described warning sign. It was what is called a McClosky bombshell torch, about eight inches in diameter. It was set upon a mound of earth. The color of the flame of this torch was a reddish-yellow.

On the country road upon which appellee was traveling just before she turned east on highway 36 there was a "U. S. 36" and a "Kansas 22" sign with an arrow pointing straight ahead. This sign was located eighteen or twenty feet north of highway 36 on the right-hand side of the road.

The statute under which the action was brought is R. S. 1931 Supp. 68-419, and is as follows:

"Any person who shall without contributing negligence on his part sustain damage by reason of . . . any defect in a state highway . . . may recover such damages from the state of Kansas."

The case was tried on the theory that when the road was made impassable and put in a dangerous condition on account of the construction work it became defective. In fact, in answer to a special question as to what constituted the defect in the highway the jury answered simply "Under construction." This is not the law. If it were, then roads could not be constructed at all in Kansas. It would be more nearly correct to say that while a road is under construction in the manner that this one was, as far as the traveling public is concerned, there is no road there at all either defective or not defective.

On the night when the injury occurred the road stopped at the Rosborough corner, much the same as though it had never been laid out beyond that point.

The case of *Story v. Brown County,* 116 Kan. 300, 226 Pac. 772, was one where a new bridge was being constructed and a temporary bridge had been erected. A traveler was injured by running off the temporary bridge. The jury found that the proximate cause of the injury was "insufficient warning." In dealing with the question of what constituted the defect this court said:

"The defendant suggests that the statutory liability of the county is limited to injuries by reason of a 'defective bridge, culvert or highway' (R. S. 68-301); that when the statute cited was enacted no law required lights to be maintained on bridges or highways or any place, although one has since been passed making it the duty of the county in some circumstances to cause red lights to be used at night to mark detours on account of road repairs (R. S. 68-121); and that it was not the legislative purpose to extend the scope of the county's liability. Where the subsequent statute imposes upon the county a new duty with the purpose of making highways safer, we regard the omission of that duty as creating a defect in the highway within the meaning of the act establishing the county's liability. However, the present judgment is not based upon the omission of the statutory duty to provide lights, but upon the county's permitting the highway to become defective through a failure to adopt some

sufficient method of giving warning of dangers due to alterations which were in progress—of conditions making a detour necessary." (p. 302.)

To the same effect is *Rosebaugh v. Allen County Comm'rs*, 120 Kan. 266, 243 Pac. 277. These cases establish the rule in Kansas that in cases of the type under consideration the condition of the highway on account of the construction work going on, together with the absence of sufficient warnings and barricades, constitute the defect.

The question of the absence or presence of the signs and warnings, as heretofore detailed herein, was submitted to the jury. These questions and answers were as follows:

"11. And was either or both the warning sign down and the light out at the Rosborough intersection at the time plaintiff passed by? State whether one or both, or which. A. We don't know.

"12. If you answer question number 11 in the affirmative, did any of the officers or employees of the Kansas state highway commission have notice or knowledge that either or both said warning signs was down and said light out at said time? A. Notified after accident.

"13. If you answer question number 12 in the affirmative, then state the name of the officer or employee of the Kansas state highway commission who had such knowledge or notice. A. W. D. Scully.

"14. Do you find that on the night of the 3d day of July, 1929, a warning sign had been put up and a torch lighted at the Rosborough intersection prior to the accident? A. Yes.

"15. If you answer both questions number 11 and number 14 in the affirmative, then state what was the cause of said warning sign being down, or said light out, at time plaintiff passed by. A. We don't know.

"16. Do you find that on the nights immediately preceding July 3, 1929, it was the practice of the parties having charge of the construction of highway number 36 to maintain a warning sign and light at the Rosborough intersection? A. Yes."

The answer of "We don't know" to questions 11 and 15 has the same legal effect as though the questions were answered flatly in the negative. (*Pioneer Trust Co. v. Combs*, 123 Kan. 356, 255 Pac. 81.) Since this is true, then with the answer to the other questions we have the sign in the middle of the road with a light burning at the foot of it, and undisputed evidence of a sign just ahead of the car in which appellee was riding just before it turned east to the bridge, warning travelers that those who wished to travel on highway 36 should continue on north. We have concluded that these questions and answers amount to a positive finding that there were sufficient signs and warnings of the condition of the highway in question to

warrant this court in saying as a matter of law that the highway was not defective. On account of what has been said, it is our conclusion that the motion for judgment on the special questions should have been sustained.

The judgment of the district court is reversed with directions to dismiss the case.